UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA
Criminal No. 21-27 (PAM)

| | |
|---|---|
| UNITED STATES OF AMERICA, | |
| Plaintiff, | **GOVERNMENT'S POSITION REGARDING SENTENCING** |
| v. | |
| JASON ROBERT BURHAM KARIMI, | |
| Defendant. | |

The United States by its attorneys, Andrew M. Luger, United States Attorney for the District of Minnesota, and David P. Steinkamp, Assistant United States Attorney, hereby submits its Position Regarding Sentencing in the above-entitled matter.

1.  **SENTENCING GUIDELINES.**

    A.  **Base Offense Level.**

    The government agrees with the finding of the PSR that the base offense level is 12.

    B.  **Specific Offense Characteristics.**

    The government agrees with the PSR that a 4-level reduction of the base offense level is warranted because the event involved a single instance with little or no deliberation, reducing the offense level to 8.

2.  **CHAPTER 3 ENHANCEMENT.**

    The government agrees with the PSR that a 6-level increase is warranted because the victim was a government officer or employee and the offense of conviction was motivated by the victim's status, increasing the offense level to 14.

3. **ACCEPTANCE OF RESPONSIBILITY.**

The parties erred in the plea agreement when they recommended a 3-level reduction for acceptance of responsibility. The appropriate reduction is for 2 levels, which the government urges the Court to apply. Accordingly, the total offense level is 12.

4. **CRIMINAL HISTORY.**

In the plea agreement, the parties anticipated that the Defendant's criminal history category would be II, but it was calculated to be III. The government agrees that based on his criminal record, the Defendant could properly fall within criminal history category III. However, because a majority of the offenses the Defendant has committed appear to involve minor drug crimes, and because the Defendant has committed no other violent crimes in his past, the government recommends that the Court find the Defendant's criminal history to be overstated at III, and find that category II more accurately reflects the Defendant's criminal past.

5. **APPLICABLE GUIDELINE RANGE.**

With a total offense level of 12 and a criminal history category of II, the guidelines recommend a range of 12-18 months imprisonment.

6. **SENTENCING FACTORS.**

Under 18 U.S.C. 3553(a), when determining the ultimate sentence, the Court looks to the nature and circumstances of the offense; the history and characteristics of the Defendant; the seriousness of the offense; the need to promote respect for the law; the need to provide adequate deterrence and protection of the public; providing the Defendant with needed educational training, vocational training, medical care, or other correctional

treatment in the most effective manner; the kinds of sentences available; and the applicable guideline sentencing range.  18 U.S.C. 3553(a).

Here, under the unique facts and circumstances of this case outlined in the PSR, and based on the individual characteristics of this Defendant, the government seeks a sentence of imprisonment of 12 months, a sentence within the recommended guideline range. The government urges the Court to reject a sentence of probation.

A.   **The Nature of the Offense.**

This offense is extremely serious.  On January 11, 2021, at approximately 3:45 p.m., the Defendant called the California office of the Speaker of the House of Representatives using his cellphone.  The Defendant a left this message for the Speaker: "Hi Nancy, I want you to be as scared as possible, terrified and shitting your pants with your child raping brother, we're coming for ya', we're going to fuck you up and we are going to cause you pain in every way possible your house being vandalized, that was quite unfortunate but it wasn't far enough, so we're going to end all political power you have make it so you can't even walk in anything but a wheelchair."

The Defendant threatened to harm an individual crucial to the functioning of our government.  The Speaker is third in the line of succession to the presidency.  The Defendant was clearly dissatisfied with some word or action taken by the Speaker and intended to try to terrorize and intimidate to achieve some objective.  Strident political discourse is the bedrock of our democracy.  It is what drives people to run for office, support a particular candidate, and head to the polls to cast their vote.  This is not a case about political discourse.

This case is about rage, violence and spreading terror to obtain a goal. The Defendant's reaction to political events boiled over into disgusting and dangerous threats of violence.

Further, both this crime, directed at the Speaker of the House, and the incident directed at the female Governor of Iowa (described below) show a pattern developing; that is the Defendant's violent and rage filled comments are only directed at women in power that he disagrees with. This is a significant factor that the Court should weigh heavily in favor of a significant prison sentence.

### B.     The History and Characteristics of the Defendant.

Although the Defendant's criminal history may be overstated, he still has a history of committing crimes. In 2017 he received his first misdemeanor conviction and failed to comply with the terms of his probation. In 2018 he committed credit card fraud and was placed on 18 months' probation. Three months after he was convicted, he violated the terms of probation and was sent to jail for 7 days. While on probation for the credit card fraud he was convicted of a new offense, possession of marijuana, in 2019.

The Defendant spends much of his sentencing argument claiming that his mental illness of bipolar disorder was responsible for his crimes. The government does not dispute that the Defendant has been struggling with chronic mental health issues for years. He may well have been affected by his bipolar disorder when he committed the offense here. However, this should be weighed by the Court against his long history of the diagnosis and all of the treatment that he has been offered but refused to accept.

He reported he was first diagnosed with bipolar disorder in 2009 at the age of 20, which was later confirmed multiple times. He has been hospitalized for this disorder and

been prescribed medication for it. He has been treated by many psychologists and psychiatrists over the past 12 years, and yet he has not managed his illness even after being given all the tools to do so. As recently as 2019, he underwent a mental health and substance abuse evaluation and was recommended to engage in counseling sessions. He complied with court-ordered treatment from March-July of 2019. Clearly, the Defendant knows how his disease affects him and yet he has ignored efforts to alleviate or reduce his illness. He has a responsibility to maintain his treatment regimen. The Court should weigh this against his claim for leniency.

Further, this is not the first time his illness has gotten him into trouble with law enforcement. In 2019, he threatened another female politician, the Governor of Iowa, in a very similar way. On December 6, 2019, at approximately 11:20 p.m., the defendant called the office of Iowa Governor Kimberly Reynolds and said, when he was done with the Governor, "rape will be something she will be begging for"; he was going to "fuck you so hard, that your cunt will be three feet wide"; and "I'm telling you to your face, I'm going to fuck you in the cunt."

The instant offense is not a one-time behavior for the Defendant. He did it before, and he should have sought help before he repeated the same behavior approximately one year later. Although he has not yet been convicted of this offense, this incident certainly provided him with notice that his illness needed to be treated and his behavior regulated.

C. **Deterrence and the Need to Protect the Public.**

The public needs to be protected from this kind of behavior. At a relatively young age, the Defendant has begun a pattern of expressing extreme emotional rage and the desire

to inflict physical harm when he disagrees with a political position. More alarming, these threats are exclusively directed at female officials in positions of great power. His behavior not only terrorizes these victims but could chill the ambitions of other young women who are considering a career in politics or public service. Further, although the Defendant claims he would never carry out the threats, there is no guarantee of that. History is full of examples of individuals who first claim they are going to commit a violent act, and later carry it out.

A strong sentence will also deter others from committing this type of threat using social media or cellphones. It is becoming much easier to engage in anonymous threats over social media. The Court should send a strong message that this behavior is not just rude and disgusting, but it is a crime and will be dealt with as such.

### D.     Probation is Not Warranted.

The Defendant seeks a sentence of probation. A sentence of probation also does not create deterrence or respect for the law. This was a very serious crime. It was directed against the woman who is in succession to fill the office of the President of the United States. It was committed at a time when our country was already under great stress due to the attacks on the Capitol on January 6, 2022. Although mental illness may have played a part in the Defendant's actions, the threats were also made because he opposed the victim's political beliefs. When the Defendant does not like what female politicians stand for, he threatens them with rape and serious injury. This cannot be allowed in a civilized democratic society.

More importantly, the Defendant does not have a good record of complying with probation. While on previous probation he has violated court-ordered terms. He has committed new offenses while on probation. Placing him on probation for this serious

federal offense will likely result in a similar outcome. A sentence of imprisonment will send the Defendant a strong message of deterrence, and a lengthy term of supervised release will get him the assistance of the U.S. Probation office to address his mental health and substance abuse issues.

**7.  SUPERVISED RELEASE.**

The government requests a supervised release term of 3 years, which will give the Defendant both the time and resources necessary to address his mental illness and substance abuse issues.

Dated: April 5, 2022

Respectfully Submitted,

ANDREW M. LUGER
United States Attorney

*s/ David P. Steinkamp*

BY:  DAVID P. STEINKAMP
Assistant U.S. Attorney
Attorney ID No. 178470